UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| SEYMOUR STATEN | ) | |
| | ) | |
| v. | ) | No. 3:10-0029 |
| | ) | JUDGE CAMPBELL |
| UNITED STATES OF AMERICA | ) | |

MEMORANDUM

I. Introduction

Pending before the Court is a Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Docket No. 1), and supporting documents (Dockets No. 9, 10), filed by the Movant/Petitioner (hereinafter "Petitioner"), pro se. After the Court appointed counsel, Petitioner filed a Motion To Address Other Issues At Evidentiary Hearing (Docket No. 34), and supporting Memorandum (Docket No. 35), which the Court granted. (Docket No. 37). The Government has filed a brief and the affidavit of trial counsel in response to the Motion To Vacate. (Docket Nos. 24, 24-1). The Court held an evidentiary hearing in this case on February 3, 2011.

Based on the evidence adduced at that hearing, the pleadings and briefs filed by both parties, the record of Petitioner's underlying conviction, and the entire record in this case, the Court concludes that Petitioner's Motion is To Vacate is DENIED as set forth below, and this action is DISMISSED.

II. Procedural and Factual Background

In the underlying criminal case, the Petitioner was charged with conspiracy to distribute and to possess with intent to distribute five kilograms or more of cocaine, 50 grams or more of

cocaine base, and 100 kilograms or more of marijuana, in violation of 21 U.S.C. § 846 (Count One); possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count Fifty-Four); possession with intent to distribute and distribution of 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count Fifty-Five); and possession with intent to distribute and distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count Fifty-Seven). (Docket No. 460 in Case No. 3:07-00171)). Thirty other individuals were also named as Defendants. (Id.)

Petitioner was initially represented by appointed counsel, Charles Buckholts, but was relieved when retained counsel, Robert Vaughn, entered the case. (Docket Nos. 662, 663 in Case No. 3:07-00171).

Prior to trial, Petitioner entered into a Plea Agreement with the Government, in which the Petitioner agreed to plead guilty to possession with intent to distribute 500 grams or more of cocaine (Count Fifty-Four). (Docket Nos. 769, 1566 in Case No. 3:07-00171). The Anticipated Sentencing Guidelines Range set forth in the Plea Agreement was 97 to 121 months of imprisonment. (Id., at ¶ 11(c)). The Plea Agreement foreclosed any argument by the Petitioner for a reduction below the guideline range based on his mental disabilities or other reason. (Id., at ¶ 12). The Court accepted the Petitioner's guilty plea and approved the Plea Agreement. (Id.)

After the change-of-plea hearing, the Petitioner moved to withdraw his guilty plea based on a mental evaluation conducted by Dr. Lyn McRainey after the hearing. (Docket Nos. 1178, 1180 in Case No. 3:07-00171). According to the evaluation, the Petitioner suffered from mild mental retardation, and would require extra time to process information. (Docket No. 1178 in Case No. 3:07-00171).

The parties subsequently entered into a second Plea Agreement, which permitted the Petitioner to request a sentence outside the guideline range. (Docket No. 1252, at ¶ 12, in Case No. 3:07-00171). The Anticipated Sentencing Guidelines Range set forth in the second Plea Agreement was 108 to 135 months of imprisonment. (Id., at ¶ 11(c)). According to the Plea Agreement, recent information suggested a higher Criminal History Category for Petitioner than was anticipated in the prior agreement. (Id., at ¶ 11(b)). The Court reviewed the second Plea Agreement with the Petitioner and determined that his guilty plea was entered knowingly, intelligently, and voluntarily. (Docket No. 1567, at 24-25 in Case No. 3:07-00171). One of the provisions the Court explained to the Petitioner estimated the maximum sentence as 40 years and the statutory mandatory minimum as five years, or 60 months. (Id., at 9).

At the subsequent sentencing hearing, defense counsel requested a below-guideline sentence of 60 months based on the Petitioner's mild mental retardation, and presented his mother and sister as witnesses, as well as the mental evaluation by Dr. McRainey, in support of the request. (Docket No. 1568 in Case No. 3:07-00171). The Government opposed the request, contending that the Petitioner should receive a sentence at the low end of the guideline range of 108 to 135 months. (Id.) The Court ultimately determined that Petitioner did not satisfy the requirements for a departure under the Sentencing Guidelines, but concluded that application of the factors set forth in 18 U.S.C. § 3553(a) warranted a below-guideline sentence of 87 months. (Id.; Docket No. 1273 in Case No. 3:07-00171). At the conclusion of the hearing, the Court advised the Petitioner of his right to appeal and that any notice of appeal had to be filed within ten days. (Id., at 61). The Court also gave the Petitioner a Notice of Appeal form. (Id.) The record reveals that no appeal was taken by either the Petitioner or the Government.

At the evidentiary hearing on Petitioner's Motion To Vacate, the Petitioner called his mother, Gwendolyn Santiago, who testified that she and her daughter hired Petitioner's trial counsel, Robert Vaughn, to represent him in the criminal case. She testified that Mr.Vaughn told her the Defendant would get no more than five years. On cross examination, Ms. Santiago stated that she came to all the hearings in the Petitioner's criminal case, but did not recall the Court advising him that he was subject to a sentence of up to 40 years. Ms. Santiago also said she did not recall Mr. Vaughn's telling her that five years would be a minimum sentence, rather than a maximum sentence.

As to the allegation that trial counsel failed to file an appeal in the criminal case after the Petitioner asked him to do so, the Petitioner chose to rely on his signed Declaration (Docket No. 10) rather than testify at the hearing.

The Government then called Mr. Vaughn to testify at the hearing. Mr. Vaughn testified that he had been practicing law for 31 years, is licensed in Tennessee, and was admitted to the District Court for the Middle District of Tennessee in 1985. Mr. Vaughn stated that he has represented individuals in criminal cases in 35 different states in state and federal courts, and has participated in oral argument in four different federal circuit courts on multiple occasions.

Mr. Vaughn testified that he was hired by the Petitioner's family to represent the Petitioner in the criminal case, and took over representation from appointed counsel. According to Mr. Vaughn, the parties had been working on a plea agreement, and the Petitioner initially pled guilty, but upon learning new information, Mr. Vaughn moved to withdraw from the guilty plea.

Mr. Vaughn testified that at the initial meeting with the Petitioner, he felt that "there was

4

obviously something not exactly right" because the Petitioner had difficulty maintaining eye contact. When he asked the Petitioner's mother about the issue, she told Mr. Vaughn that the Petitioner was "slow." Mr. Vaughn testified that after several more conversations, she disclosed to him that the Petitioner had been the victim of an accident when he was 17 months old, and had been run over by a car driven by a neighbor. Mr. Vaughn said he felt the Petitioner's mother was reluctant to discuss the accident because she felt responsible, and the Petitioner's sisters had no memory of the accident.

After learning of the accident, Mr. Vaughn testified, he followed up and after much searching, with the help of the Petitioner's sister, was able to locate the accident report in the archives at the Williamson County Police Department. Mr. Vaughn felt the accident report helped to explain the problems the Petitioner seemed to have with maintaining eye contact and in discussions. Because he was concerned about the Petitioner's competence, he filed a motion with the Court to have the Petitioner undergo a mental evaluation by Dr. Lyn McRainey.

Mr. Vaughn testified that after he received the mental evaluation from Dr. McRainey, he started new negotiations with Assistant United States Attorney Tom Kent. Mr. Vaughn explained that in the first plea agreement, the Petitioner agreed not to seek any type of departure from the particular guideline range, and in the second plea agreement, that language was removed so that the Petitioner would be free to seek a departure or variance at sentencing.

Mr. Vaughn testified that he went over the second plea agreement with the Petitioner on several occasions "word for word and line for line." Although he charged a flat fee, Mr. Vaughn testified, he was committed to do everything he needed to do to represent the Petitioner.

Mr. Vaughn testified that he spoke with the Petitioner, as well as the Petitioner's mother

5

and sisters, numerous times in his office, on the phone, and in the facility where the Petitioner was incarcerated.

Mr. Vaughn testified that he spoke with the Petitioner about the facts of his case, and learned that one of the older co-defendants had been a father figure for the Petitioner, in whom the Petitioner placed a great deal of trust. Mr. Vaughn testified that he felt the Petitioner had been used and abused by this older individual and wanted to bring that out at sentencing. According to Mr. Vaughn, he and the Petitioner also discussed the recorded telephone conversations he had received in discovery, and they discussed the numerous kilos of cocaine to which the Government sought to hold the Petitioner accountable. Mr. Vaughn explained that he shared all written discovery with the Petitioner, but because the jail in which Mr. Vaughn was housed did not have the ability to play compact discs, he had to recite to the Petitioner the substance of the recorded conversations from the notes he had made. Mr. Vaughn testified that he discussed potential defenses with the Petitioner, though the competency issue was the only defense he found. Mr. Vaughn testified that he performed legal research in connection with the Petitioner's case, including research on the issue of competence.

During the second plea hearing, according to Mr. Vaughn, the Court was very careful in going over the plea agreement with the Petitioner, and asked the Petitioner several times whether he understood the provisions of the agreement. Mr. Vaughn testified that he recalled the Court advising the Petitioner that he faced a maximum of 40 years imprisonment. Mr. Vaughn testified that before the hearing, he had also gone over maximum sentence the Petitioner faced, as well as the statutory mandatory minimum sentence of 60 months, and the applicable advisory sentencing guideline range.

6

Mr. Vaughn testified that he went over the lengthy indictment with the Petitioner word for word. Although only a few counts involved the Petitioner, Mr. Vaughn explained, going over all the counts helped refresh the Petitioner's recollection about names, conduct, places or times, especially as the Petitioner hoped to provide substantial assistance to the Government. Mr. Vaughn testified that the Petitioner was ultimately unable to provide assistance that was "substantial" because the Petitioner was being used and only had limited contact with a number of the people involved.

Mr. Vaughn testified that he did not promise the Petitioner a specific sentence. He stated that it is his practice to advise clients that he could not guarantee anything, but could only provide them with the statistical odds of a certain sentence based on his experience. Mr. Vaughn testified that he initially told the Petitioner that it looked realistically like he might get 12 years, but that he would make every effort to try and get 10 years or below. Mr. Vaughn said he told the Petitioner that they were in "damage control" as the case did not necessarily involve an issue of guilt or innocence. Mr. Vaughn testified that he explained to Ms. Santiago, the Petitioner's mother, that 60 months was the lowest sentence that the Petitioner could receive, and that the ultimate sentencing decision would be up to the judge.

Mr. Vaughn testified that he recalled the Court advising the Petitioner of his right to appeal, but that the Petitioner never asked him to file an appeal. According to Mr. Vaughn, he met with the Petitioner in the U.S. Marshal's lock-up after the sentencing and discussed the sentence imposed and a possible appeal. Mr. Vaughn testified that the Petitioner did not say he wanted Mr. Vaughn to file an appeal. Mr. Vaughn pointed out that both the first and second plea agreements contained a provision waiving appeal of any sentence within the guideline range, and

that he had explained those provisions to the Petitioner.

Mr. Vaughn testified that he exercised the skills and diligence that a reasonably competent attorney would in his representation of the Petitioner. In that regard, Mr. Vaughn stated that he was especially sensitive to the competence issue given his representation of a former client who had attempted suicide. Mr. Vaughn testified that he investigated the facts of the case, as well as the law applicable to the charges facing the Petitioner. Mr. Vaughn stated that he took the books with applicable cases or statutes and went over them when he met with the Petitioner.

Based on conversations with Dr. McRainey and her evaluation of the Petitioner, Mr. Vaughn stated, he felt comfortable that the Petitioner was capable of giving a knowing and intelligent plea of guilty.

Mr. Vaughn testified that over his career, only one client had filed a Section 2255 motion regarding his representation, and the court found him to have rendered effective assistance of counsel in that case.

On cross examination, Mr. Vaughn testified that he did not write letters to the Petitioner because he did not believe the Petitioner could read very well, if at all, and did not want others reading the correspondence to the Petitioner. Consequently, Mr. Vaughn stated, there is no documentation in his file that the Petitioner told him not to file an appeal.

Mr. Vaughn testified that although Dr. McRainey did not specifically state that the Petitioner was competent, he interpreted her report to mean that the Petitioner had a low IQ, but was not incompetent. Mr. Vaughn stated that after receiving Dr. McRainey's report, he did not hire an expert to opine on the issue of competence.

III. Analysis

A.  The Petitioner's Claims

Petitioner contends that his conviction should be vacated because he received the ineffective assistance of counsel.

B. The Section 2255 Remedy/Evidentiary Hearing Not Required.

Section 2255 provides federal prisoners with a statutory mechanism by which to seek to have their sentence vacated, set aside or corrected.[1]  The statute does not provide a remedy, however, for every error that may have been made in the proceedings leading to conviction. The statute contemplates constitutional errors, and violations of federal law when the error qualifies as a "fundamental defect which inherently results in a complete miscarriage of justice." Reed v. Faley, 512 U.S. 339, 114 S.Ct. 2291, 2296, 2299-2300, 129 L.Ed.2d 277 (1994); Grant v. United States, 72 F.3d 503, 505-06 (6th Cir. 1996).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that the Court shall consider the "files, records, transcripts, and correspondence relating to the judgment under attack" in ruling on a petition or motion filed under Section 2255. In addition, where the same judge considering the Section 2255 motion also conducted the trial, he may rely on his

---

[1] 28 U.S.C. § 2255 states, in part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

recollections of the trial. Blanton v. United States, 94 F.3d 227, 235 (6th Cir. 1996).

c. Ineffective Assistance of Counsel

In order to prevail on an ineffective assistance of counsel claim, the burden is on the Petitioner to show: (1) trial counsel's performance fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for the deficiency, the outcome of the proceedings would have been different. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); Campbell v. United States, 364 F.3d 727, 730 (6th Cir. 2004).

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Strickland, 104 S.Ct. at 2052; Ludwig v. United States, 162 F.3d 456, 458 (6th Cir. 1998). In analyzing trial counsel's performance, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id., at 2065.

In order to show actual prejudice in the guilty plea context, the Petitioner generally must show that "there is a reasonable probability that, but for counsel's unprofessional errors, he would not have pled guilty and would have insisted on going to trial." Hill v. Lockhart, 47 U.S. 52, 106 S.Ct. 366, 369-70, 88 L.Ed.2d 203 (1985). The Sixth Circuit has held that prejudice may also be established by showing that "there is a reasonable probability that the conditions of [the] guilty plea or [the] sentence would have been different but for his trial counsel's errors." Newman v. United States, 162 F.3d 1162 (Table), 1998 WL 553048 (6th Cir. 1998). A reasonable probability is "a probability sufficient to undermine confidence in the outcome."

Strickland, 104 S.Ct. at 2052.

Petitioner argues that trial counsel was ineffective for: (1) failing to correctly advise the Petitioner of the actual facts of his case; (2) promising Petitioner a specific sentence which he did not receive; (3) failing to perfect and file a direct appeal when requested to do so by Petitioner; (4) failing to exercise the skills and diligence that a reasonably competent attorney would have provided under the circumstances; (5) failing to investigate the actual facts of the case; (6) failing to make himself aware of the relevant law applicable to Petitioner's case; (7) failing to correctly advise Petitioner of the relevant law in relation to the facts of his case; and (8) failing to conduct a minimal investigation that might have possibly led to potential mitigating evidence.

With regard to Petitioner's allegations that counsel failed to correctly advise him of the actual facts of his case, failed to exercise the skills and diligence that a reasonably competent attorney would have provided under the circumstances, failed to investigate the actual facts of the case, failed to make himself aware of the relevant law applicable to Petitioner's case, failed to correctly advise Petitioner of the relevant law in relation to the facts of his case, and failed to conduct a minimal investigation that might have possibly led to potential mitigating evidence, the Petitioner has offered no factual support for the allegations, and they are, therefore, dismissed.

As for Petitioner's allegation that trial counsel promised a specific sentence, Petitioner offered the testimony of his mother that Mr. Vaughn told her that the Petitioner would receive a sentence of 60 months. On the other hand, Mr. Vaughn testified that he did not advise either the Petitioner or his family that they could expect a 60-month sentence. Mr. Vaughn testified that

11

any mention of a 60-month sentence would only have been made in the context of explaining the statutory mandatory minimum sentence faced by the Petitioner.

Having observed the bearing, deportment and demeanor of the witnesses, the Court credits Mr. Vaughn's testimony that he did not promise the Petitioner or his family a 60-month sentence. Given the guideline range that applied to the Petitioner, 108 - 135 months, any such promise would have been unreasonable and illogical. Moreover, the Court notes that it advised the Petitioner at the plea hearing that he faced a maximum sentence of 40 years and a guideline range of 108-135 months (Docket No. 1567, at 9, 14-15 in Case No. 3:07-00171). The court also advised the Petitioner that the final decision on his sentence would be up to the Court. (Id.) Thus, even if counsel had suggested a specific sentence, the Petitioner and his family would not have acted reasonably in relying on such a suggestion. The Court concludes that this claim is without merit.

As for Petitioner's claim that counsel should have engaged a second expert to opine as to Petitioner's competence, the Court concludes that the Petitioner has failed to demonstrate any prejudice resulting from such a failure. Petitioner has not offered any proof that he is presently incompetent or that he was incompetent during the criminal proceedings. In any event, the Court is not persuaded that trial counsel was unreasonable in relying on Dr. McRainey's report, as well as conversations with the expert, in concluding that Petitioner was competent. The report suggests that Petitioner requires extra time to process information and does not state that Petitioner is incompetent. Mr. Vaughn testified that he followed that advise in his meetings with the Petitioner and the Court also followed that advise during proceedings with the Petitioner. Accordingly, the Court concludes that this claim is without merit.

Finally, the Court is not persuaded that counsel was ineffective in failing to file a direct appeal. In Roe v. Flores-Ortega, 528 U.S. 470, 120 S.Ct. 1029, 1035, 145 L.Ed.2d 985 (2000), the Supreme Court reiterated prior decisions that it is "professionally unreasonable" for a lawyer to fail to file an appeal when specifically instructed by a client to do so. In such a case, the defendant is entitled to a delayed appeal and need not show any likelihood of success on its merits. Id.

When the client has not specifically instructed his or her attorney to file an appeal, however, the court is to consider whether the attorney "consulted" with the defendant about the advantages and disadvantages of filing an appeal. 120 S.Ct. at 1035. If the attorney has consulted with his client about the possibility of filing an appeal, his or her conduct is considered professionally unreasonable only if he or she fails to follow the defendant's express instructions. Id. If the attorney failed to consult with his or her client, the court is to examine whether that failure constitutes deficient performance. Id. at 1035-36. See also Regalado v. United States, 334 F.3d 520, 524-25 (6th Cir. 2003).

Petitioner argues that he instructed trial counsel to file a direct appeal, and supports his claim with a signed Declaration filed in this case. On the other hand, Mr. Vaughn testified, subject to cross examination, that he met with the Petitioner in lock-up after the sentencing hearing, and discussed the sentence imposed and whether to appeal. Mr. Vaughn testified that the Petitioner did not, at that time or any other time, request that he file a notice of appeal. The Court credits the testimony of Mr. Vaughn and finds that he acted reasonably in consulting with the Petitioner about filing an appeal and that the Petitioner did not specifically instruct Mr. Vaughn to file an appeal. This claim is without merit.

13

IV. Conclusion

For the reasons set forth herein, the Court concludes that Petitioner is not entitled to relief under 28 U.S.C. § 2255. Therefore, the Petitioner's Motion Under § 2255 is denied, and this action is dismissed.

Should the Petitioner give timely notice of an appeal from this Memorandum and Order, such notice shall be treated as a application for a certificate of appealability, 28 U.S.C. 2253(c), which will not issue because the Petitioner has failed to make a substantial showing of the denial of a constitutional right. Castro v. United States, 310 F.3d 900 (6th Cir. 2002).

It is so ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE